UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CAROL RUBINOW, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:08-cv-1697 (VLB) |
| BOEHRINGER INGELHEIM, | : | |
| PHARMACEUTICALS, INC. | : | |
|     Defendant. | : | May 10, 2010 |

**RULING AND ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION TO COMPEL [Doc. #39]**

**I. INTRODUCTION**

This employment discrimination action was commenced by the Plaintiff, Carol Rubinow, on November 7, 2008.  The Plaintiff is a former employee of the Defendant, Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer"), a multi-national corporation with offices in many locations around the world.  Boehringer terminated the Plaintiff's employment in July 2007, when she was 49 years old.  She alleges that her discharge was motivated by age animus in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60.

The Court issued a Scheduling Order in this matter on March 19, 2009.  See Doc. #15.  Pursuant to that Order, the Court set the deadline to complete discovery for March 16, 2010 and the dispositive motion deadline for May 14, 2010.  On January 21, 2010, the Plaintiff filed a motion for 60 additional days to conduct discovery, claiming that a discovery dispute between the parties necessitated an

<␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊

extension of the discovery deadline.  The Defendant objected to that motion on the basis that the case was over one year old and that discovery had been ongoing for nearly that long.  On January 28, 2010, the Court conducted a telephone conference with the parties in an attempt to resolve their discovery dispute as contemplated by Fed. R. Civ. P. 37.  During the conference, the parties agreed to meet and confer regarding the details of their discovery dispute.  On the basis of that commitment, the Court entered an Order the same day denying the Plaintiff's motion for extension of time.  See Doc. #36.  In accordance with the Court's chambers practices, the Court invited the parties to bring any discrete legal issues that they were unable to resolve to the Court for resolution in the form of a brief joint statement summarizing the dispute and each party's position with respect thereto.  Id.

     Contrary to the Court's instruction, rather than filing a joint statement or a motion to compel pursuant to Fed. R. Civ. P. 37, on March 3, 2010, the Plaintiff filed yet another motion for extension of the discovery deadline, claiming that an unspecified discovery dispute between the parties remained unresolved and that the Plaintiff was unable to conduct depositions of the Defendant's fact witnesses without obtaining discovery to which she claimed she is entitled.  See Doc. #37.  Since it had become clear that the parties were unable to resolve any portion of their discovery dispute absent Court intervention, on March 4, 2010, the Court issued an Order directing the Plaintiff to file a motion to compel by March 8, 2010 if she continued to maintain that she had not received discovery to which she is

legally entitled. See Doc. #38. Subsequently, on March 8, 2010, the Plaintiff filed the instant motion to compel, in which she seeks to compel supplemental responses to numerous interrogatories and requests for production of documents. See Doc. ##39, 40. The Defendant filed its opposition to the Plaintiff's motion on March 12, 2010. See Doc. #41.

## II.  DISCUSSION

The scope of discovery in civil actions is defined by Rule 26(b) of the Federal Rules of Civil Procedure. Pursuant to Rule 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." The term "relevance" is construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." James v. Tilghman, 194 F.R.D. 398, 400 (D. Conn. 1999) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The party receiving a request must not only produce information which is admissible as evidence, but also information which "appears reasonably calculated to lead to admissible evidence." James, 194 F.R.D. at 400.

However, there are limits on the scope of discovery. Pursuant to Rule 26(b)(2), the Court has an obligation to ensure that discovery requests are reasonable. The Court must limit the extent of discovery if it determines that the

discovery sought is unreasonably cumulative or duplicative or overly burdensome.  See Fed. R. Civ. P. 26(b)(2).  Moreover, discovery of information that is not "reasonably calculated to lead to the discovery of admissible evidence" is impermissible.  See Yancey v. Hooten, 180 F.R.D. 203, 207 (D. Conn. 1998).  The district court has broad discretion in resolving discovery disputes.  Id.

In determining whether to exercise its discretion to order the Defendant to respond to the discovery requests at issue, the Court first considers the Plaintiff's claims, as the nature and elements of her claims dictate the scope of discovery to which she is entitled.  The Plaintiff's Second Amended Complaint asserts three claims against the Defendant:  first a claim for violation of the ADEA; second, a claim for violation of the CFEPA; and third, a claim for intentional infliction of emotional distress.

In order to establish a prima facie case of age discrimination under the ADEA, a plaintiff must show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010).  The elements of a prima facie claim for discrimination under the CFEPA are substantially similar to the elements of an ADEA claim.  Under the CFEPA, a plaintiff must prove that "(1) she was a member of a protected class; (2) she was qualified for her position; (3) she was discharged; and (4) the termination occurred under circumstances giving rise to an inference of

discrimination." Sample v. Wal-Mart Stores, Inc., 273 F. Supp. 2d 185, 188 (D. Conn. 2003). If the plaintiff establishes a prima facie case of age discrimination under the ADEA or CFEPA, the burden then shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its adverse employment action. Gorzynski, 595 F.3d at 106. Once such a reason is provided by the defendant, the plaintiff may still prevail if she can show that the reason given was a pretext for discrimination and that she would not have been terminated but for her age. Id. (citing Gross v. FBL Financial Services, 129 S.Ct. 2343, 2352 (2009)).

Finally, to prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000).

Importantly, this case involves a single plaintiff who alleges that she was intentionally discriminated against by her employer because of her age. Thus, the Plaintiff is asserting a "disparate treatment" claim under the ADEA and CFEPA. See Zawacki v. Realogy Corp., 628 F. Supp. 2d 274, 280 (D. Conn. 2009) ("In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.") (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

Contrastingly, "disparate impact" claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Id. In order to state a claim under a disparate impact theory, an employee must do more than simply allege a disparate impact on workers, or identify a generalized policy that leads to such an impact. Zawacki, 628 F. Supp. 2d at 280. Instead, the employee must isolate and identify "the *specific* employment practices that are allegedly responsible for any observed statistical disparities." Id. Although the Plaintiff alleges in her Second Amended Complaint that the Defendant had a generalized policy of terminating older workers and replacing them with younger workers, that allegation seems to support a disparate treatment claim, as she fails to identify any specific, facially neutral policy that disproportionately impacts older employees. Instead, all of the factual allegations in her Second Amended Complaint relate to her individual claim that her supervisors intentionally placed her on probation and then terminated her employment because of her age and because she "looked too old."

Furthermore, the Plaintiff's Second Amended Complaint does not properly allege a "pattern and practice" claim. A "pattern and practice" claim is a type of disparate treatment claim that alleges widespread acts of intentional discrimination against a class of individuals rather than isolated or sporadic incidents of discrimination against a single individual. See Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 158 (2d Cir. 2001). In order to succeed on

such a claim, a plaintiff must prove that intentional discrimination was the defendant's "standard operating procedure." Id. As an initial matter, although not conclusively decided by the Second Circuit, several district courts within this Circuit have suggested that a plaintiff cannot bring a "pattern and practice" claim for age discrimination outside of the class action context. See, e.g., Foster-Bey v. Henderson, 3:98-CV-01097 (EBB), 2000 WL 620331, at *1 n.1 (D. Conn. Apr. 7, 2000) ("The Court is not convinced that a plaintiff may bring a 'pattern and practice' claim in a non-class action complaint."); Milani v. IBM, 322 F. Supp. 2d 434, 453 n.34 (S.D.N.Y. 2004) ("It is by no means clear that a private plaintiff can even bring a 'pattern-or-practice' claim in a non-class action complaint"); Blake v. Bronx Lebanon Hosp. Ctr., No. 02 Civ. 3827 (CBM), 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 7, 2003) ("the court doubts that a plaintiff can bring a 'pattern and practice' claim in a non-class action complaint").

In any event, even if a single plaintiff could assert a "pattern and practice" claim, the allegations contained in the Second Amended Complaint do not support such a claim. Other than herself, the Plaintiff merely identifies six other "older" or "older looking" employees whom the Defendant allegedly terminated or forced to quit or retire, out of a workforce of several thousand, and her Complaint fatally fails to allege particularized facts describing the conditions surrounding their termination or forced retirement. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (requiring a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation marks

omitted). These allegations are insufficient to state a "pattern and practice" claim. See Krish v. Conn. Ear, Nose & Throat, Sinus & Allergy Specialists, P.C., 607 F. Supp. 2d 324, 329-32 (D. Conn. 2009) (noting that plaintiffs bringing "pattern and practice" claims are generally required to provide evidence of a concrete policy and/or statistical evidence in support of the claim combined with anecdotal evidence to support the claim, and dismissing "pattern and practice" claim where plaintiff merely alleged three instances of age discrimination that followed a similar pattern); Foster-Bey, 2000 WL 620331, at *1 n.1 (recognizing the need for a plaintiff asserting a "pattern and practice" claim against a large entity to provide a "statistical sampling" in order to support the claim); Blake, 2003 WL 21910867, at *5 ("a plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words "pattern" or "practice").

With these principles in mind, the Court now turns to the specific information sought by the Plaintiff in her motion to compel.

 A. <u>Demographic Information on Employees Hired, Fired, or Laid Off by Defendant</u>

In production requests 18-23, the Plaintiff seeks disclosure of the names, titles, grade, market area, department, ages, and reasons for termination for all employees who were fired or left Boehringer during the time period from January 1, 2002 to December 31, 2007. In production requests 24-29, the Plaintiff seeks the same information for all employees who were hired by Boehringer during the time period from January 1, 2002 to December 31, 2007.

The Plaintiff argues that she is entitled to this discovery because she has

pleaded disparate treatment, disparate impact, and "pattern and practice" theories in her Second Amended Complaint.  In support of her disparate impact and "pattern and practice" claims, the Plaintiff asserts in Counts One and Two of her Second Amended Complaint that the Defendant "exhibited a continuous pattern and practice of age discrimination and/or had a policy of discriminating against older workers above the age of 49 years of age, in favor of hiring, retaining and employing younger workers."  Compl. ¶¶ 90, 98.  The only legal authority she cites in support of her entitlement to the exceedingly broad discovery that she requests is a statement made by the Supreme Court in dicta in a disparate impact case commenting generally on the scope of the discovery rules in civil cases.  See Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 657 (1989) ("liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their claims").

   While Fed. R. Civ. P. 8(d)(2) permits the pleading of multiple theories in the alternative in a single count or separately, as discussed above, the Plaintiff's Second Amended Complaint fails to adequately plead a disparate impact or "pattern and practice" claim.  The Plaintiff's assertions in the Second Amended Complaint regarding the Defendant's alleged "pattern and practice" of age discrimination and maintenance of a discriminatory policy are wholly conclusory.  Instead, all of the factual allegations contained in the Second Amended Complaint relate to her claim that she herself was intentionally discriminated against on the basis of her age.  Thus, this action plausibly alleges only a disparate treatment

claim brought by a single plaintiff. The Defendant employs over 9,000 people in the United States alone. The Plaintiff has failed to show how the company-wide data she has requested is reasonably calculated to lead to the discovery of admissible evidence in a single plaintiff age discrimination action relating to the Plaintiff's termination from her position as a PR Coordinator IV at the Defendant's Ridgefield, Connecticut location.

Moreover, as established by the authority cited by the Defendant, discovery in disparate treatment cases brought by a single employee such as this one is limited to information regarding employees who are similarly situated to the Plaintiff. See, e.g., Mazella v. RCA Global Communications, 642 F. Supp. 1531, 1547-48 (S.D.N.Y. 1986) (stating that, in order for evidence relating to other employees to be relevant in a disparate treatment case, those employees must be "situated similarly" to the plaintiff, meaning that they "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it"); Hall v. Family Care Visiting Nurse, No. 3:07CV911 (JCH), 2008 WL 5191591, at *3 (D. Conn. Dec. 10, 2008) (where plaintiff asserted employment discrimination claims based upon her gender and pregnancy, court permitted limited discovery of information contained in personnel files only for pregnant employees holding the same position as the plaintiff); Raghavan v. Bayer USA, Inc., No. 3:05-CV-682

(CFD), 2007 WL 2099637, at *2-3 (D. Conn. July 17, 2007) (holding that evidence relating to how supervisors in locations other than plaintiff's location treated employees with different work responsibilities than the plaintiff was not relevant to plaintiff's benefits discrimination claim and therefore was not discoverable); Patterson v. Food Group LLC/Pond House Cafe, No. Civ. 3:02 CV 1137 JCH, 2004 WL 1701079, at *1-2 (D. Conn. Mar. 31, 2004) (denying plaintiff's motion to compel documents related to employees who were not similarly situated to him, and denying plaintiff's motion to compel date of hire and race of individuals hired for employment by defendant on the basis that hiring information was not relevant to plaintiff's claim that he was terminated on the basis of his race and/or age); Suggs v. Capital Cities/ABC, Inc., 122 F.R.D. 430, 431 (S.D.N.Y. 1988) (holding that plaintiff, who alleged that her employer denied her a promotion to the position of staff field producer because of her race, was not entitled to discovery regarding employees in other positions).

Accordingly, the Court holds that the Plaintiff is not entitled to discovery of the broad company-wide data regarding the Defendant's firing and hiring of every single employee over a six-year period that she requests. Instead, this request is properly limited to discovery of the requested information regarding employees similarly situated to the Plaintiff, meaning employees who reported to the same supervisor(s) as the plaintiff, were subject to the same standards governing performance evaluation and discipline, and engaged in conduct similar to the Plaintiff's, without differentiating or mitigating circumstances that would

11

distinguish their conduct or the appropriate discipline for it. To the extent that this information has not already been provided to the Plaintiff, the Court directs the Defendant to produce such information to the Plaintiff within ten days of the date of this Order.

### B. Supervisors' Personnel Files

In production requests 13 and 14, the Plaintiff seeks the personnel files for her former supervisor, Marybeth McGuire, and McGuire's supervisor, Amy Fry. The Defendant has responded to this request by providing the Plaintiff with detailed "Max Plans" for McGuire for the two years she supervised the Plaintiff, and has further represented that McGuire's personnel files contain no disciplinary warnings. The Plaintiff contends that the Defendant's response is overly narrow. She claims that she is entitled to "all performance reviews, letters and memos of discipline, performance compensation such as bonus and equity awards and miscellaneous documents related to the supervisor's performance of her duties as an employee and a manager." The Plaintiff claims that she is also entitled to receive the "supervisor's file" for McGuire and Fry, and the "recruiter's portion of the personnel file" for these supervisors. The Plaintiff argues that she is entitled to this information because McGuire and Fry directly managed her employment and allegedly made the decision to terminate her employment.

Connecticut has explicitly recognized the privacy interests inherent in personnel information. See Conn. Gen. Stat. § 31-128f. While the Plaintiff's entitlement under Rule 26(b) to discovery relevant to her claims may overcome

**12**

these privacy interests, her present request is patently overbroad.  The Plaintiff fails to explain how her request is reasonably calculated to lead to the discovery of admissible evidence.  For instance, she requests the "supervisor's file" for McGuire and Fry, but neglects to inform the Court what the "supervisor's file" is or what she believes it is likely to contain.  In addition, the Plaintiff requests the "recruiter's portion of the personnel file" for McGuire and Fry, which ostensibly contains information on new hires and promotions.  However, as explained above, discovery in disparate treatment cases such as this case is limited to information regarding employees who are similarly situated to the Plaintiff.  The Plaintiff fails to make any showing as to how hiring and promotional information for employees who were not similarly situated to her could possibly be relevant to her claim for discriminatory termination.  See Patterson, 2004 WL 1701079, at *2 (denying plaintiff's motion to compel information regarding employees hired by defendant because such information was not relevant to plaintiff's claim that he was terminated on the basis of his race and/or age).

 Accordingly, the Court holds that production requests 13 and 14 must be substantially limited.  The Plaintiff is entitled to receive only those portions of the personnel files for McGuire and Fry that reflect their education, training, and experience as a manager, including their managerial abilities, accomplishments, developmental opportunities, and deficiencies, because this information may be relevant to her claim that these supervisors intentionally discriminated against her.  The Plaintiff is also entitled to receive information regarding McGuire and

13

**Fry's treatment of job applicants and employees who were similarly situated to the Plaintiff, as defined above. To the extent that this information has not already been provided to the Plaintiff, the Court directs the Defendant to produce such information to the Plaintiff within ten days of the date of this Order. If any documents to be produced contain information regarding employees who were not similarly situated to the Plaintiff, the Defendant may redact this information.**

### C. Remaining Interrogatories and Production Requests

In addition to the issues discussed above, the Plaintiff objects to the Defendant's responses to a number of interrogatories on the basis that the responses are "conclusory," "evasive," or "unintelligible."[1]  The Court has reviewed the Defendant's responses and concludes that they are responsive and comprehensive.  The Plaintiff is not entitled to dictate the specific manner in which the Defendant responds to her interrogatories, or the precise language used in the Defendant's responses.  To the extent that a party has reason to believe that a respondent has additional responsive information, the proper procedural tools to elicit that information are supplemental interrogatories and depositions.

Similarly, the Plaintiff objects to the Defendant's responses to several requests for production of documents on the basis that the Defendant is withholding documents due to its general objections.[2]  However, the Defendant

---

[1]  **The interrogatory responses to which the Plaintiff objects on this basis are the Defendant's responses to interrogatories 3-5, 9-20, and 23-24.**

[2]  **The request for production responses to which the Plaintiff objects on this basis are the Defendant's responses to production requests 1, 3-5, 9-11, and 16.**

**14**

has represented to the Court and to Plaintiff's counsel, both verbally during the January 28, 2010 telephone conference and in writing, that it has withdrawn all general objections lodged in response to the Plaintiff's interrogatories and production requests and produced all documents in its possession responsive to these requests. See Pl. Mem. at 5-6. The Plaintiff is unable to articulate any particular reason why she believes that the Defendant is withholding responsive documents, apart from her counsel's speculation. Notably, the one responsive document that the Plaintiff claims to have discovered through its own investigation that she contends was not produced by the Defendant - a February 25, 2007 email between Marybeth McGuire and Karen Apgar - was in fact produced by the Defendant nearly six months before the Plaintiff filed the instant motion to compel. See Def. Mem. at 12. This suggests that the Plaintiff has been less than diligent in reviewing the documents that have been produced by the Defendant, which may be contributing to the parties' inability to resolve their discovery disputes.

Attorneys are officers of the Court with a professional obligation to conduct due diligence and a duty of candor to the tribunal. The Court correctly relies on the ethical conduct of attorneys admitted to practice before it. Bald accusations intimating a failure to discharge those duties simply demean the profession and foster incivility without aiding the Court in overseeing the discovery process.

### III. CONCLUSION

For the foregoing reasons, the Plaintiff's motion to compel [Doc. #39] is

**GRANTED IN PART and DENIED IN PART. To the extent that the Defendant has not already provided the Plaintiff with all discovery to which she is entitled as discussed above, the Defendant is ordered to do so within ten days of the date of this Order.**

                                           **IT IS SO ORDERED.**

                                           /s/
                                       **Vanessa L. Bryant**
                                       **United States District Judge**

**Dated at Hartford, Connecticut:  May 10, 2010.**